644 So.2d 1105 (1994)
STATE of Louisiana
v.
Leonard A. GRUBBS.
No. 93-KA-2559.
Court of Appeal of Louisiana, Fourth Circuit.
October 25, 1994.
*1109 Eve Barrie Masinter, McGlinchey Stafford Lang, New Orleans, for appellant, Leonard A. Grubbs.
Harry F. Connick, Dist. Atty., Susan M. Erlanger, Asst. Dist. Atty., New Orleans, for appellee, State.
Before BARRY, JONES and LANDRIEU, JJ.
BARRY, Judge.
The defendant was convicted of two counts of aggravated rape (R.S. 14:42), two counts of aggravated kidnapping (R.S. 14:44), and two counts of aggravated crime against nature (R.S. 14:89.1). He was sentenced to life imprisonment at hard labor without benefit of parole for each count of aggravated rape and aggravated kidnapping and fifteen years at hard labor without benefit of parole for each count of aggravated crime against nature, the sentences to run concurrently.
Defendant's convictions and sentences were affirmed in an unpublished errors patent opinion, State v. Grubbs, 515 So.2d 677 (La.App. 4th Cir.1987), and he was subsequently granted this out-of-time appeal under Lofton v. Whitley, 905 F.2d 885 (5th Cir.1990). We affirm.

FACTS
On August 4, 1986 T.G. and P.R. (males, ages 14 and 15) were visiting New Orleans with P.R.'s parents.[1] That evening the two boys walked in the French Quarter and met the defendant and his friend, Benjamin Roethell. Both boys testified that defendant and Roethell initiated a conversation and asked if they wanted marijuana. The boys agreed and voluntarily accompanied the men to the defendant's apartment several blocks away. The men and boys smoked one joint at the apartment. Roethell said he needed to do laundry and left. The defendant left the apartment on the pretense of obtaining more marijuana. Within three minutes the boys decided to leave but the defendant returned with a gun and forced them to stay.
The defendant ordered both boys to undress and they complied. T.G. and P.R. both testified that the defendant tied their hands and for the next two to three hours he performed oral and anal sex and forced them to perform oral sex on him and on each other. T.G. testified that the defendant held a knife to T.G.'s penis, bit his testicles and threatened him with a shock stick if he did not comply. T.G. testified the defendant held the knife against his chest and performed anal sex on him.
P.R. corroborated T.G.'s testimony. P.R. said the defendant held a knife to P.R.'s genitals, forced P.R. to perform oral sex on him and that defendant performed oral and anal sex on both victims.
The boys stated that the defendant told them to bathe. At about 2:00 a.m. he escorted them out of the apartment, through the locked front gate and pointed the way back to their hotel.
The boys returned to the hotel and informed P.R.'s mother what transpired. P.R.'s father was out looking for the boys. The police were contacted and the boys led the officers to defendant's apartment. The boys positively identified the defendant and Roethell.
Roethell testified for the State. He said the defendant asked him to leave the apartment because he wanted to "hit up on," i.e., have sex with the boys. Roethell stated that he left the apartment and looked through a window and saw the defendant point a gun at the boys. He said the defendant borrowed the gun from his neighbor Wayne David.
Physical examinations of the boys revealed no seminal fluid or spermatozoa. Dr. Michael Grieb, the emergency room physician who performed the examinations, noted a small abrasion on T.G.'s penile shaft and inflammation around P.R.'s anus. Dr. Grieb testified that a bath often destroys evidence of rape.
The defendant testified that he met the boys in the French Quarter and offered to smoke pot with them at his apartment. He claimed that the boys attempted to steal his pot and he borrowed David's gun. The defendant *1110 said he prevented the boys from stealing the pot and the boys offered to have sex with him. He claimed that T.G. made overtures toward him and the three had oral sex. Defendant denied that he used force or engaged in anal sex.

ILLEGALLY LENIENT SENTENCE
Our review of the record reveals an error patent. A sentence under LSA-R.S. 14:42, 14:44 and 14:89.1 is required to be without benefit of probation, parole, or suspension of sentence. The trial court failed to state that the sentences were to be served without the benefit of probation or suspension of sentence. However, on appeal this Court will not correct an error favorable to a defendant where the issue is not raised by the State. State v. Fraser, 484 So.2d 122 (La.1986); LSA-C.Cr.P. art. 882.

BRADY INFORMATION
Defendant contends a mistrial should have been granted because the State failed to disclose exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
At the Preliminary Examination, Detective Mason Spong testified that he investigated the incident and that the boys reported that the defendant forced them to his apartment with an implied weapon.
T.G. testified on the first day of trial that he and P.R. voluntarily followed defendant and Roethell to the defendant's apartment and smoked marijuana and the defendant used a gun to prevent them from leaving. He stated that he and P.R. initially lied to the police because they did not want to disclose that they went to smoke marijuana. P.R. corroborated T.G.'s testimony on the second day of trial. The record does not contain the grand jury testimony.
The morning of the second day of trial, the defense sought a mistrial claiming that T.G.'s conflicting testimony constituted Brady material withheld by the State. Alternatively, the defense requested an in camera review of the grand jury testimony for possible exculpatory evidence. The trial court stated it would conduct an in camera inspection, then denied the defense motion. The record does not show whether the in camera inspection was made. Defendant argues that the boys' grand jury testimony is material because it could have impeached their trial testimony.
In Brady v. Maryland, 373 U.S. at 87-88, 83 S.Ct. at 1197, the United States Supreme Court held that "the suppression of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment." See also LSA-C.Cr.P. art. 718. That rule has been expanded to include evidence which impeaches the testimony of a witness, where the reliability or credibility of the witness may be determinative of guilt or innocence. Giglio v. United States, 405 U.S. 150, 153-55, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). Evidence is material if there is a "`reasonable probability' that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A `reasonable probability' is a probability sufficient to undermine confidence in the outcome." United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985); State v. Knapper, 579 So.2d 956, 959 (La.1991).
There is no duty to provide defense counsel with unlimited discovery. However, if the subject matter of a request for evidence is material or if a substantial basis for claiming materiality exists, the prosecutor who receives a specific and relevant request must respond by either furnishing the information to defense counsel or by submitting the matter to the judge. United States v. Agurs, 427 U.S. 97, 106-08, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976); State v. Perkins, 423 So.2d 1103, 1107 (La.1982); State v. Yancy, 465 So.2d 48, 51 (La.App. 4th Cir.), writ den. 469 So.2d 985 (La.1985). See U.S.C.A. Const. Amends. 5, 14.
The defendant requested in his bill of particulars the content of any unwritten statement by any person which constitutes exculpatory evidence. In response the State revealed that the boys admitted that when they first encountered the defendant and Roethell "there was some discussion about marijuana and going to party, `party' and the use of *1111 marijuana", and Roethell told the grand jury that the boys were interested in purchasing marijuana. The State did not reveal the boys' change in testimony or discuss the grand jury testimony as to whether they were forced to the defendant's apartment.
A defendant is generally not entitled to a grand jury transcript. LSA-C.Cr.P. art. 434; State v. Sheppard, 350 So.2d 615, 630 (La.1977). In an effort to balance the competing interests of Brady and the secrecy of grand jury proceedings, the Louisiana Supreme Court has authorized an in camera inspection by the trial judge of a grand jury transcript. State v. Peters, 406 So.2d 189, 191 (La.1981). See State v. Ates, 418 So.2d 1326, 1329 (La.1982). Disclosure after in camera review for Brady material is in the sound discretion of the trial judge. State v. Trosclair, 443 So.2d 1098, 1103 (La. 1983), cert. dismissed, Trosclair v. Louisiana, 468 U.S. 1205, 104 S.Ct. 3593, 82 L.Ed.2d 889 (1984).
The trial court should have conducted an in camera inspection of the grand jury testimony. However, the court's conduct was harmless. Under Brady and its progeny, evidence is material and discoverable if there is a "reasonable probability" that the outcome of trial would have been different if the evidence had been disclosed to the defense.
The defense was aware that the boys originally reported that the defendant forced them to his apartment with an implied weapon (Detective Spong testified at the preliminary examination) and the defense used that information at trial to cross-examine and attempt to impeach the victim's credibility. The discrepancy between the boys' trial testimony and their report to the police was clearly disclosed to the jury on direct examination by the state. Defense counsel forcefully and extensively questioned the boys about their motive for telling the officers that the defendant had a gun prior to getting to the apartment. The jury considered the impeachment value of the testimony and weighed the boys' credibility.
There is no reasonable probability that the boys' grand jury testimony would have affected the outcome of the trial.

OTHER CRIMES AND CLOSING ARGUMENT
The defendant contends the prosecutor impermissibly cross-examined him concerning other crimes, namely, the defendant's purchase of marijuana and his homosexual relationship with Roethell. Defendant also asserts that the prosecutor's statements during closing argument concerning defendant's homosexual relationship with Roethell went beyond the scope of LSA-C.Cr.P. art. 774 and mandated a mistrial under LSA-C.Cr.P. art. 770. The prosecutor noted that defendant's relationship with Roethell began when Roethell was sixteen years old and argued that it was apparent the defendant liked young boys.
An irregularity or error cannot be complained of after verdict unless it was objected to at the time of occurrence. LSA-C.Cr.P. art. 841. A defendant must state the specific error so that the trial court has the opportunity to make the proper ruling to prevent or cure any possible error. The defense is limited on appeal to those grounds articulated at trial. State v. Jackson, 450 So.2d 621, 634 (La.1984); State v. Baker, 582 So.2d 1320, 1336 (La.App. 4th Cir.1991), writ den. 590 So.2d 1197 (La.1992), cert. den., Baker v. Louisiana, ___ U.S. ___, 113 S.Ct. 62, 121 L.Ed.2d 30 (1992).
The defendant did not object to the state's cross-examination or closing argument on those issues. During cross examination, defense counsel objected to the defendant giving the name of the person from whom defendant purchased marijuana, but the basis of the objection was relevancy and not other crimes evidence. Defendant's failure to object precludes appellate review of those arguments. LSA-C.Cr.P. art. 841.
We note that the information which defendant objects to was first raised by the defense. The defendant testified during direct examination that he purchased marijuana and that he and Roethell were lovers. Roethell testified on direct examination that he *1112 was eighteen years old and stated on cross-examination by defense counsel that he lived with defendant for two years and that they were lovers.
Defendant's arguments are without merit.

ADMISSIBILITY OF TESTIMONY
Defendant argues that the trial court erred by allowing P.R.'s mother to testify because her testimony was immaterial and prejudicial. P.R.'s mother testified about the boys' actions and emotional states when they returned to the room and stated that P.R.'s father was looking for them.
The defendant did not object to the challenged testimony as being irrelevant, immaterial and prejudicial and that issue was not preserved for review. LSA-C.Cr.P. art. 841.

MOTION TO SUPPRESS IDENTIFICATION
Defendant contends the trial court erred by denying the motion to suppress his identification. The boys identified the defendant in a "one-on-one" encounter which occurred within a short time the same night of the crime.
Within an hour after the defendant released the boys, they led the officers to the apartment where the incident occurred. The defendant returned to the apartment while the officers were there and the boys immediately identified him as the person who raped and kidnapped them.
Although a "one-on-one" confrontation between a suspect and the victim is generally not favored, it is permissible when justified by the overall circumstances, particularly when the accused is apprehended within a relatively short period of time after the crime and has been returned to the crime scene. State v. Walters, 582 So.2d 317, 321 (La.App. 4th Cir.), writ den. 584 So.2d 1171 (La.1991); State v. Peters, 553 So.2d 1026, 1027 (La.App. 4th Cir.1989). Such an identification is proper because prompt confrontation between a defendant and the victim promotes fairness by assuring reliability of the identification because the victim's memory is fresh and the expeditious release of an innocent suspect. State v. Robinson, 404 So.2d 907, 909 (La.1981); State v. Muntz, 534 So.2d 1317, 1320 (La.App. 4th Cir.1988).
This Court must determine whether the police used an impermissibly suggestive procedure to obtain the out of court identification and, if so, whether the suggestive procedure gave rise to a substantial likelihood of irreparable misidentification. State v. Valentine, 570 So.2d 533, 535 (La.App. 4th Cir. 1990).
Five factors are considered to determine whether the suggestive procedure gave rise to a substantial likelihood of irreparable misidentification: 1) the victim's opportunity to view the defendant at the time the crime was committed; 2) the degree of attention paid by the victim during the commission of the crime; 3) the accuracy of any prior description; 4) the level of the victim's certainty displayed at the time of the identification; and 5) the length of time elapsed between the crime and identification. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); State v. Valentine, 570 So.2d at 536.
In State v. Valentine a restaurant was robbed in the middle of the night by a man wearing a ski mask. The victims called the police and the defendant was apprehended shortly thereafter two blocks from the scene of the robbery. The police officer took the defendant to the scene to be identified by the victims. The victims separately viewed the defendant who was seated in the back of a car. This Court upheld the identification because there was no showing of unreliability or suggestiveness. See also State v. Loyd, 425 So.2d 710 (La.1982); State v. Bickham, 404 So.2d 929 (La.1981); State v. Johnson, 619 So.2d 1102 (La.App. 4th Cir.), writ den. 625 So.2d 173 (La.1993).
Defendant argues that the identification was unduly suggestive and there was a substantial likelihood of misidentification. Before the defendant returned to the apartment, one of the officers showed the boys a picture of the defendant with two other men and asked if they recognized any of the three as the perpetrator. The picture of the three men is not in the record. Detective Spong *1113 testified at the hearing on the motion to suppress that neither boy identified the defendant from the photograph. When the defendant arrived at the apartment, both boys positively identified him.
T.G. and P.R. were in the defendant's presence for several hours and had the opportunity to view him closely. They initially spoke with the defendant for a few minutes before he left and returned with the gun. During the next two to three hours, the defendant had very close contact with both boys. The boys identified the defendant less than one hour after being released by the defendant. They lead the police to the defendant's apartment complex and positively identify the defendant and Roethell immediately upon seeing them.
If the identification procedure was suggestive, there is no likelihood of misidentification. The boys' identification of the defendant was independent of any photograph.
This assignment lacks merit.

JURY INSTRUCTION
Defendant argues that the trial court's jury instruction defining reasonable doubt was unconstitutional under Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990). The Cage instruction contained the terms "grave uncertainty," "moral uncertainty," and "actual substantial doubt" and was held to violate the defendant's constitutional rights.
The defense did not object to the jury charge and the issue was not preserved for appeal. LSA-C.Cr.P. art. 841; State v. Berniard, 625 So.2d 217 (La.App. 4th Cir.), on rehearing 625 So.2d 220 (La.App. 4th Cir.1993).
Nonetheless, the jury instruction was not constitutionally deficient. The trial court instructed the jury:
... And even where the evidence demonstrates a probability of guilt, yet if it does not establish it beyond a reasonable doubt, you must acquit the accused. Now, this doubt must be just that a reasonable one. That is one founded upon a real, tangible substantial basis and it not upon mere caprice, fancy or conjecture. It must be such a doubt as would give rise to uncertainty raised in your minds by reason of the unsatisfactory character of the evidence. Now while the state must prove guilty beyond a reasonable doubt, it does not have to prove guilty beyond all possible doubt. Reasonable doubt is doubt based on reason and common sense and is present when after you have carefully considered all of the evidence you cannot say that you are firmly convinced of the truth of the charge.
A reasonable doubt is not a mere possible doubt, it is an actual or substantial doubt. It is such a doubt as a reasonable person would seriously entertain. It is a serious doubt, a doubt for which you can give a good reason. (emphasis added)
Defendant objects to the use of "serious," "firmly" and "actual" because they suggest a higher degree of doubt than is required for acquittal by the "reasonable doubt" standard.
The standard to be used when considering an allegedly improper jury instruction is whether there is a reasonable likelihood that the jury applied the challenged instruction in an unconstitutional manner. Victor v. Nebraska, ___ U.S. ___, ___, 114 S.Ct. 1239, 1241, 127 L.Ed.2d 583 (1994); State v. Smith, 91-0749 (La. 5/23/94); 637 So.2d 398, 402 (La.1994); State v. Kelly, 92-2446 (La.App. 4 Cir. 7/8/94); 639 So.2d 888, 893 (La.App. 4th Cir.1994). The challenged terms are considered in relation to the instruction as a whole to determine whether the jurors were reasonably likely to have misapplied the instruction. State v. Smith, 637 So.2d at 403.
This Court upheld use of the term "actual or substantial doubt" when used in the identical context and preceded by the statement that "reasonable doubt is not a mere possible doubt." State v. Kelly, 639 So.2d at 895. Likewise, the term "serious," when read in the context of the two immediately preceding sentences, merely provides an alternative definition to distinguish it from "possible doubt." Those terms as used address the existence rather than the magnitude of the doubt.
*1114 The use of the word "firmly" in the context of the charge does not refer to the degree of doubt required for conviction but to the certainty that the evidence supports the crime charged.
We conclude there is no reasonable likelihood that the jury applied the challenged instruction in an unconstitutional manner. This assignment is without merit.

INEFFECTIVE ASSISTANCE OF COUNSEL
Defendant argues that his counsel was ineffective because he failed to object to the jury charge on reasonable doubt. That argument is without merit.
Ineffective assistance of counsel is generally addressed in an application for post conviction relief filed in the trial court where a full evidentiary hearing can be conducted. State v. Prudholm, 446 So.2d 729, 737 (La. 1984); State v. Johnson, 619 So.2d at 1110. However, when the record contains sufficient evidence to address the merits of the claim, this Court will consider the issue in the interest of judicial economy. State v. Seiss, 428 So.2d 444, 448 (La.1983); State v. Johnson, 619 So.2d at 1110.
To support an ineffective assistance of counsel claim a defendant must show counsel's performance was deficient and that deficiency prejudiced him. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Bell, 543 So.2d 965, 969 (La.App. 4th Cir.1989). The defendant must prove that counsel made such errors that he was not functioning as the "counsel" guaranteed by the Sixth Amendment and that counsel's errors were so serious as to deprive him of a fair trial. Strickland v. Washington, supra; State v. Bell, 543 So.2d at 969; State v. Crowley, 475 So.2d 783, 987 (La.App. 4th Cir.1985). The defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland v. Washington, 104 S.Ct. at 2068.
Because the trial court's jury charge on reasonable doubt was not constitutionally infirm, counsel was not deficient by failing to object. Moreover, even if the instruction were identical to that in Cage, counsel's failure to object to the charge years before Cage was decided cannot be deemed deficient. State v. Wolfe, 630 So.2d 872, 883 (La.App. 4th Cir.1993).
Defendant further argues that trial counsel was ineffective because he did not to object to the introduction of other crimes evidence during the cross-examination of the defendant and the state's rebuttal closing argument; failed to request a mistrial under LSA-C.Cr.P. art. 770(2) based on the admission of other crimes evidence; and failed to object to the testimony of P.R.'s mother as irrelevant, immaterial and highly prejudicial. Defendant argues that the combination of those errors was so serious that it resulted in an unfair trial.
Defendant admitted on direct examination that he purchased marijuana and had some in his apartment: "I didn't want to lose my pot because it cost money and I don't buy a lot...." He said that he used the pretext of buying marijuana to leave his apartment and get a gun from Wayne David. He testified on direct examination that he told the boys he and Roethell were lovers. The State's cross-examination and rebuttal argument were in response to the defendant's testimony on direct examination. Because the defendant raised the contested issues, trial counsel had no basis to object to the State's questions and remarks during rebuttal closing argument.
Even assuming that trial counsel was ineffective by failing to object and seek a mistrial based on other crimes evidence, the record does not show that counsel's failure to object was prejudicial because the defendant raised those issues before the jury. That argument is without merit.
Defendant also argues that trial counsel was deficient because he failed to object to the testimony of P.R.'s mother as irrelevant and prejudicial. P.R.'s mother testified that she woke up about 2:00 a.m. and discovered that the boys were not in *1115 their beds. She said P.R.'s father left to look for them and the boys returned while he was gone. She stated that P.R. was sobbing and T.G. appeared to be in a trance.
That testimony was clearly relevant to show the boys' emotional states after the incident. One of the elements of aggravated rape is the lack of consent. Evidence of a victim's emotional state after the incident is relevant to show the lack of consent by the victim. Defense counsel had no basis to object to the testimony.
This assignment is without merit.

CORRECTED SENTENCING TRANSCRIPT
Defendant argues the trial court increased his sentences on the aggravated crime against nature from five to fifteen years after the original appeal was granted.
The record contains the certified, corrected transcript of the sentencing held on February 10, 1987 and the original transcript of that sentencing. The transcripts are identical except that the corrected transcript shows that defendant was sentenced to fifteen years at hard labor on each count of aggravated crime against nature and the original transcript shows five years at hard labor on each count. The docket master and minute entries of February 10, 1987 are consistent with the corrected transcript and show fifteen years at hard labor. Defendant argues five years prevails and the trial court was without authority to increase the sentence after the original appeal was granted on February 10, 1987 and without defendant present.
When there is a conflict between the minute entry and the transcript on appeal, the transcript prevails. State v. Jones, 557 So.2d 352, 354 (La.App. 4th Cir.1990). The corrected transcript is certified as a true and accurate transcript of the sentencing and is consistent with the docket master and minute entry. The trial court clearly did not increase defendant's sentence but corrected an error in the transcription.
Code of Criminal Procedure article 916 provides in pertinent part:
The jurisdiction of the trial court is divested and that of the appellate court attaches upon the entering of the order of appeal. Thereafter, the trial court has no jurisdiction to take any action except as otherwise provided by law and to:
* * * * * *
(2) Correct an error or deficiency in the record.
Considering the sequence of the entries, the trial court sentenced the defendant to fifteen years at hard labor on each count, the minute clerk entered the sentences of fifteen years in the docket master and minute entry, and when the sentencing was transcribed the trial court noted the error and corrected it. Our conclusion is bolstered by the commitment order prepared by the trial court on February 10, 1987 which states that the defendant was sentenced to fifteen years at hard labor on each count of aggravated crime against nature.
This assignment is without merit.

SUFFICIENCY OF THE EVIDENCE
Defendant argues that the evidence was insufficient to convict.
This Court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each essential element of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817, 820 (La.1987).
When circumstantial evidence is used, the elements must be proven such that every reasonable hypothesis of innocence is excluded. LSA-R.S. 15:438; State v. Wright, 445 So.2d 1198, 1201 (La.1984). R.S. 15:438 does not establish a separate test from Jackson v. Virginia, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found the defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d at 1201. All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. Id.
*1116 Rape is defined in R.S. 14:41 as "the act of anal or vaginal sexual intercourse with a male or female person committed without the person's lawful consent. Emission is not necessary and any sexual penetration, vaginal or anal, however slight is sufficient to complete the crime."
Aggravated rape is:
a rape committed where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
* * * * * *
(2) When the victim is prevented from resisting the acts by threats of great and immediate bodily harm, accompanied by apparent power of execution.
* * * * * *
(3) When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon.....
LSA-R.S. 14:42.
Both boys testified the defendant had a gun and forced them to disrobe. He was also armed with a knife and placed it against the victims' genitals. Both boys said the defendant had anal intercourse with them without their consent. The defendant held the knife against T.G.'s chest when he had anal sex. The defendant also threatened to use a shock stick on T.G. if he did not comply. Reviewing the evidence in the light most favorable to the prosecution, there was sufficient evidence for the jury to conclude that the defendant was guilty of two counts of aggravated rape beyond a reasonable doubt.
Aggravated kidnapping is defined in R.S. 14:44 as
the doing of any of the following acts with the intent thereby to force the victim ... to give up anything of apparent present or prospective value ... in order to secure a release of the person under the offender's actual or apparent control:
(1) The forcible seizing and carrying of any person from one place to another; or
(2) The enticing or persuading of any person to go from one place to another; or
(3) The imprisoning or forcible secreting of any person.
The abduction of a victim with the intent to commit rape constitutes an intent to force the victim to give up something of apparent or prospective value. State v. Winn, 412 So.2d 1337 (La.1982); State v. Sonnier, 402 So.2d 650 (La.1981), cert. den., Sonnier v. Louisiana, 463 U.S. 1229, 103 S.Ct. 3571, 77 L.Ed.2d 1412 (1983).
In State v. Arnold, 548 So.2d 920 (La. 1989), the Supreme Court found the evidence sufficient to support a conviction of aggravated kidnapping where the defendant forced the victim into defendant's car, prevented the victim's escape by holding her down and threatening her with a knife, and attempted unsuccessfully to vaginally rape her, then forced her at knife point to perform oral sex. The Court held that the relevant factor was not whether the defendant explicitly told the victim that having sex with him would secure her release, rather the issue was whether the kidnapper "sought to obtain something of value, be it sex or money or loss of simple human dignity, by playing upon the victim's fear and hope of eventual release in order to gain compliance with his demands." State v. Arnold, 548 So.2d at 925.
In State v. Moran, 584 So.2d 318 (La.App. 4th Cir.), writ den. 585 So.2d 576 (La.1991), the evidence was sufficient where the victim was forced into the defendant's car, raped, then ordered out of the car. The court noted that under those circumstances "any reasonable person would comply with the defendant's demands in the hope of securing a release. The victim was in fact released once the rape occurred." State v. Moran, 584 So.2d at 327.
Defendant enticed the fourteen and fifteen year old boys to his apartment to smoke marijuana. After they arrived the defendant used a gun to prevent them from leaving and ordered them to disrobe. Defendant told the boys that if they did not comply with his wishes he would kill them. He bound their hands behind their backs and during the next two to three hours, performed anal sex on them and forced them to perform oral sex on him. After the defendant *1117 raped both boys, he told them to bathe and get dressed and he released them. The state produced sufficient evidence for the jury to find, beyond a reasonable doubt, that the defendant was guilty of the aggravated kidnapping of T.G. and P.R.
"Crime against nature" is defined in LSA-R.S. 14:89 as the
unnatural carnal copulation by a human being with another of the same sex or opposite sex or with an animal, except that anal sexual intercourse between two human beings shall not be deemed as a crime against nature when done under any of the circumstances described in R.S. 14:41, 14:42, 14:42.1, or 14:43. Emission is not necessary; and, when committed by a human being with another, the use of the genital organ of one of the offenders of whatever sex is sufficient to constitute the crime.
Aggravated crime against nature is defined in LSA-R.S. 14:89.1:
crime against nature committed under any one or more of the following circumstances:
* * * * * *
(2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm accompanied by apparent power of execution;
(3) When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon; or
* * * * * *
(6) When the victim is under the age of seventeen years and the offender is at least three years older than the victim.
Oral sex is proscribed as crime against nature. State v. Phillips, 365 So.2d 1304 (La.1978), cert. den., Phillips v. Louisiana, 442 U.S. 919, 99 S.Ct. 2843, 61 L.Ed.2d 287 (1979); State in Interest of Claiborne, 535 So.2d 37 (La.App. 4th Cir.1988).
The boys testified that the defendant was armed with a gun, a shock stick and a knife. He told them to disrobe, performed oral sex on them and ordered them to perform oral sex on him under threat of death or bodily harm.
Further, the defendant's testimony provided sufficient evidence for the jury to convict him of aggravated crime against nature. According to the defendant, he and the boys engaged in consensual oral sex. The boys were under the age of seventeen at the time of the offenses and the defendant acknowledged that he was thirty-four years old.
Viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to find the defendant guilty beyond a reasonable doubt on two counts of aggravated rape, two counts of aggravated kidnapping and two counts of aggravated crime against nature.
Defendant's convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] The names are not used because both victims are juveniles.