653 So.2d 748 (1995)
STATE of Louisiana
v.
Joseph HUGHES.
No. 94-K-2682.
Court of Appeal of Louisiana, Fourth Circuit.
March 29, 1995.
*749 Lynne Marie Myers, New Orleans, for relator.
Harry F. Connick, Dist. Atty., New Orleans, for respondent.
Before BARRY, PLOTKIN and WALTZER, JJ.
WALTZER, Judge.
Relator was convicted on 19 June 1989 of 2 (two) counts of armed robbery. Hughes was subsequently found to be a third offender and was sentenced to 2 (two) concurrent terms of fifty years at hard labor. From a denial of his application for post-conviction *750 relief in the trial court, the defendant now comes before this Court seeking relief from this ruling.
RELATOR'S CLAIMS
Relator raises four claims: (1) dual representation of him and his co-defendant rendered his counsel ineffective due to conflict of interest; (2) his counsel was ineffective for his failure to investigate the case and to prepare adequately for trial; (3) his counsel was ineffective due to counsel's lack of time and resources to prepare adequately for trial; and (4) his counsel was ineffective for failing to object to an erroneous jury instruction on reasonable doubt.
FACTS
We take the facts from relator's appeal. See State v. Mason, 591 So.2d 1321 (La.App. 4th Cir.1991). Relator and one Leroy Mason robbed Eldridge Thompson on 25 June 1988, in the St. Bernard Housing Development in New Orleans. The victim recognized Hughes as someone he had previously seen in the area. During the robbery, Mason had the gun and, in concert with Hughes, demanded that Thompson "give it up." Hughes and Mason made off with $12.00 and a watch. The following day the victim contacted the police and identified Hughes as a tall man with a "sleepy eye." Mason was described as a short man with gold teeth and a big head. The victim identified Mason twice and Hughes once from a photographic line-up. A few hours after the Thompson robbery, Mason and Hughes approached another victim in the St. Bernard Housing Development area. The second victim testified that Mason robbed him by using a sawed-off shotgun while Hughes had brass knuckles. Both men told him "to give it up." When this victim struggled with Mason for the gun, Hughes used the brass knuckles on the victim's head to release the gun and searched the victim's pockets. The gun broke. Hughes and Mason made off with approximately $30.00. The victim required stitches to his head. This victim described Mason as a slim man with gold teeth and "something wrong with his eyes." Hughes was described as a tall, slender, dark complected man with a large nose. The victim also testified that Hughes had referred to Mason as "Leaky" during the robbery. Shortly after the crime, the second victim identified both robbers at a photographic line-up as well as at a physical line-up. At trial, Hughes denied any involvement in the robberies and presented testimony alleging an alibi for the date of the robberies. He testified that he knew several people called "Leaky" and that Mason was called "Leaky" "now and then." Hughes' alibi claims were supported by his sister who claimed that Hughes spent weekends at her house year-round (the robberies occurred on a weekend).
CONFLICT OF INTEREST
The claim of dual representation and the resultant alleged ineffective assistance of counsel were raised by Hughes and Mason in their appeal. It appears that the claim raised then was based on Hughes' admission that Mason was known as "Leaky," thereby putting Mason on the scene of the robbery. Both defendants claimed in their appeal that dual representation denied a completely loyal defense to them. Hughes makes the same allegations in his post-conviction application. Relator's contentions do not show an actual conflict and are mere allegations of possible conflict. Relator does not set forth how he was actually prejudiced. As noted by this Court in relator's appeal, "the possibility that another approach used at the trial might have produced better results `is far from making out a deprivation of constitutional right.'"Id. State v. Mason, supra at 1323 (quoting State v. Edwards, 430 So.2d 60 (La.1983)). Relator has failed to meet his burden, because relator raises the issue of joint representation for the first time after his trial, without being able to show that an actual conflict of interest adversely affected the lawyer's performance. Hughes testified he attempted to establish an alibi. The jury rejected this defense and convicted him. Hughes insists in his writ application that Mason identified him as "Leaky" and that counsel offered no evidence to refute this allegation. However, the record reflects that the second victim testified that he heard one robber calling the other "Leaky," and that it was Mason who was called "Leaky." Thus the attorney did not fail to pursue a discrepancy which did not exist. Relator *751 asserts that the identification evidence presented against him was minimal in comparison to the identification of Mason. Additionally, he claims that his counsel was unable to cross-examine the witnesses on their identification of him because to do so would have implicated his co-defendant. Hughes also points to a conflict because Mason did not assert any defense, while Hughes denied the robberies on the witness stand. All of these assertions fail. Both victims clearly identified both Mason and Hughes as the robbers. There is no explanation how Hughes' alibi would have endangered his co-defendant's defense and how that defense would have prejudiced Hughes. This claim has no merit.
FAILURE TO INVESTIGATE AND PREPARE
Relator contends that his counsel was ineffective for his failure to meet with relator to discuss the case and for his failure to investigate the case and prepare his witnesses. Relator's claim of ineffective assistance of counsel is to be assessed by the two part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Fuller, 454 So.2d 119 (La. 1984). The relator must show that counsel's performance was deficient and that the deficiency prejudiced the relator. Counsel's performance is ineffective when it can be shown that he has made errors so serious that counsel was not functioning as the counsel guaranteed to the defendant by the Sixth Amendment. Strickland, 466 U.S. at 686, 104 S.Ct. at 2064. Relator argues that counsel failed to meet with him prior to trial to determine where defendant was at the time of the robberies. He alleges further that his alibi witness was inadequately prepared, which led him and his witnesses to testify mistakenly as to his whereabouts at the time of the robberies. Apparently relator argues that it was trial counsel's fault that the alibi witness did not testify in such a way as to exonerate him, and he also hints that counsel should have told these witnesses what to say. Clearly, such action would have been highly improper on counsel's part. Viewing the testimony given at trial by these two witnesses, it does not appear that counsel's actions were so deficient that relator was deprived of a fair trial. This claim has no merit.
INSUFFICIENT RESOURCES
Relator contends that his counsel was ineffective because he was overworked and hampered by inadequate resources as an Indigent Defender Attorney. Relator argues that State v. Peart, 621 So.2d 780 (La.1993) provides him with a rebuttable presumption that all indigent defendants in Section "G" were receiving ineffective assistance of counsel due to counsel's caseload and lack of resources. However, relator failed to establish at the hearing below that his counsel was overworked and that he would have prepared a better case if he had more resources available to him. Although there was testimony by the director of the Orleans Indigent Defender Program that two attorneys were assigned to Section "G" at the time of defendant's trial, who handled between them approximately 200-250 cases that year, relator failed to call trial counsel to the stand to prove that counsel would have been more prepared and would have conducted more extensive investigation but for his workload and the limited resources available to him. Peart stands for the proposition that each claim of ineffectiveness must be evaluated on an individual basis and that "no general finding by the trial court regarding the given lawyer's handling of other cases, or workload generally, can answer that very specific question as to an individual defendant and the defense being furnished him." Id. at 788. Relator failed to make the requisite showing. This claim has no merit.
FAILURE TO OBJECT TO JURY INSTRUCTIONS
Relator argues that the instruction given at his trial was similar to that found to be constitutionally defective in Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990). He argues that because his lawyer made no objection to the charge, he was denied the right to a fair trial.
The instruction given at the trial is not identical to that found to be deficient in Cage. The only common disapproved phrase in the *752 jury instruction in Hughes' case, is "substantial" doubt.
Use of that phrase has been upheld by this Court in State v. Grubbs, 93-2559 (La.App. 4th Cir. 10/25/94), 644 So.2d 1105, and in State v. Kelly, 92-2446 (La.App. 4th Cir. 7/8/94), 639 So.2d 888, writ denied 94-2087 (La. 1/6/95), 648 So.2d 921. "Substantial doubt" is acceptable because the term informed the jurors that a reasonable doubt was more than a speculative doubt. With the court's addition of the immediate preceding sentence declaring that reasonable doubt is "not a mere possible doubt," it is clear that was the purpose of the term. "Substantial" was an alternative definition of the word. It was used in the sense of the existence of doubt rather than the magnitude. Kelly, 92-2446, at pp. 15-16, 639 So.2d at 895-896. As in Grubbs and Kelly, there is no reasonable likelihood that the jury instruction would have caused the jury to apply it in an unconstitutional manner. Thus, trial counsel did not err by failing to object to the instruction. This claim likewise has no merit. Relator's application is DENIED. There is no error in the trial court's ruling.
WRIT APPLICATION DENIED. TRIAL COURT RULING AFFIRMED.