LBYRNES, Judge.
STATEMENT OF CASE
On January 23, 1998, the defendant, Alvin Banks, was charged with violating La. R.S 14:62 relative to simple burglary of an automobile on November 20, 1997. On January 27, 1998, the defendant entered a plea of not guilty. The court advised the defendant of his right to a judge or jury trial and appointed counsel to represent him. Following a hearing on March 11, 1998, the court found probable cause and denied the defendant’s motion to suppress the identification. On February 1, 1999, the defendant waived his right to a jury trial and elected a bench trial. On February 4, 1999, the court found the defendant guilty of attempted burglary.
The State multiple billed the defendant, but on March 16, 1999, the court found the defendant not guilty of that charge. The defendant waived all legal delays and requested immediate sentence. The court sentenced the defendant to serve twenty-four months in the custody of the Department of Corrections, with credit for time served. The court granted the defendant’s oral motion for appeal.
| STATEMENT OF FACT
At the preliminary hearing and motion to suppress identification of March 11, 1998, Captain Raymond Hollard[1] of the Orleans Levee District Police testified that he participated in the investigation of a burglary on November 20, 1997. He stated that he had just finished a detail and was driving down O’Keefe Street, headed for home. At O’Keefe and Lafayette he heard an alarm going off. As he looked to his left, he observed a man with a bicycle leaning inside a sports vehicle. The sports vehicle was the only vehicle in this particular parking lot at the time. Captain Hol-lard noticed that the rear passenger door of the vehicle was open. Captain Hollard initially assumed that the man was the owner of the vehicle, and that he had simply forgotten to turn the alarm off. Accordingly, the captain continued driving up the street toward Poydras. However, because the alarm was still going off, he made a U-turn at Poydras and came back up South Rampart. At that time he observed the man on the bicycle leaving the vehicle, and the alarm was still going off. Officer Hollard noticed some plastic bags hanging from the handlebars of the man’s bicycle. Captain Hollard commenced following the man. The captain activated his P.A. system and instructed the subject to pull over. When the two men came within five feet of each other, the man turned and asked why the captain was trying to hassle him. At that time the captain was able to clearly see the man. The man then turned up South Liberty and began to pedal at a faster rate as Captain Hollard pursued him with Ms overheads on. When the 13captain turned his overheads on, the man switched over into the oncoming lane and *82 continued up South Liberty as the captain paralleled'him. Upon arriving near
Poydras Street, the man stopped his bicycle, looked over at the captain, and reversed directions, traveling back down South Liberty in the direction the two men had just left. When the captain placed his car in reverse, the man took off in the direction the two men had previously been traveling and turned onto Poydras Street, traveling against the traffic. The captain continued to pursue the man as the man attempted to elude him until finally the man escaped through an opening in the median on Poydras Street traveling against the traffic. As he rode into the opening in the median, the man was almost struck by a truck. The man then abandoned his bicycle, left the merchandise he was carrying on the ground, and ran away. Captain Hollard continued to pursue the man.
As the two men neared the corner of Loyola and Poydras Streets, the man stopped, turned toward the captain and reached into his back pocket. Captain Hollard then observed the man discard what he believed to be a pair of pliers and a screwdriver. He then took off running again, turning left up Loyola towards Canal Street. Captain Hollard caught up with the man as he turned the corner and instructed the man to put his hands in the air. Instead of complying, the man looked at the Captain, turned around and fled behind the captain’s car in the direction from which they had just come. The captain put the car in reverse. The man fled in the direction of Poydras Street going towards the lake, cutting across the neutral ground and running through a parking lot. Captain Hollard saw a New Orleans policeman crossing the street and told him that the man was the person who had discarded the merchandise in the street and the merchandise was possibly | ¿stolen. He asked the officer to keep an eye on the merchandise while he continued pursuing the man. The man eventually ran into an alleyway and escaped.
While pursuing the man, Captain Hol-lard was using his radio to broadcast that he was in pursuit of a black male wearing a gray sweatshirt and blue jeans riding on a bicycle. He broadcast this description in various locations or streets as he pursued the man.
Several members of the Orleans Criminal Sheriffs office and NOPD arrived on the scene and started searching the area. Captain Hollard was standing on the side of a criminal sheriffs vehicle when one of the officers broadcast back that they had detained a subject fitting the description given by Captain Hollard and they were going to relocate to the area where Captain Hollard was located.
When the criminal sheriff arrived at the area where Captain Hollard was located, the defendant was seated in the rear of the vehicle with his face turned away. When he turned toward Captain Hollard, the captain recognized him as the person he had been chasing. Captain Hollard was able to identify the defendant based on his facial features and his clothing. The defendant was wearing the same gray sweatshirt and blue jeans that he wore a short time earlier when Captain Hollard was chasing him. Further, Captain Hollard testified that he recognized the defendant by his facial features because during the course of that night he saw the defendant’s face four times. Captain Hollard testified that only ten or fifteen minutes elapsed between the time the defendant escaped in the alleyway and the time he was taken to Captain Hollard for identification.
After the defendant had been identified, Captain Hollard and the other officers relocated to the scene wherein the defendant had first been seen leaning | ¡¡into a vehicle and discovered that the right passenger glass of the vehicle was broken.
The officers recovered the two plastic bags previously discarded by the defendant and found the bags contained a book bag and a musical instrument in a case. Additionally, identification was found in *83 the bag that matched identification found in the vehicle.
At trial, Liza Pizani testified that she was the lessor of a green 1995 Toyota Fourunner. On November 20, 1997, at around 9:00 a.m., she parked the vehicle in a parking lot located in the area bordered by South Rampart, O’Keefe, and Lafayette streets and went to work. At that time the car was in perfect condition. When she returned to the vehicle at about 10:00 p.m. the right rear passenger window was shattered. Ms. Pizani identified items in a photograph presented to her by the State as property belonging to her. Included among the items in the photograph were her daughter’s flute case, her workout bag, a shopping bag, and a zipper case which contained medication for her daughter. She opened the workout bag and identified a pair of Nike tennis shoes, body lotion, sweat shirt, workout shorts, workout shirt, and health center forms as hers. She stated that the items were in the back seat of her locked Fourunner truck when she left it in the parking lot the morning of November 20, 1997. She also identified a Cox cable bill as a bill that was left in the back seat of her vehicle that day. She identified the contents of another bag as items left on the back seat of her Fourun-ner. She identified a flute in a case as belonging to her daughter and certain asthma prescription medications as also belonging to her daughter.
Ms. Pizani stated that when she returned to her vehicle around ten o’clock that night she found the alarm had been tampered with. The glass was shattered, Land she found a card from a police officer on the windshield notifying her that someone had broken into the vehicle. The officer requested that she call him. When she called, the officer told her what had happened. Ms. Pizani testified that she did not know the defendant, and she never gave him authority to enter her vehicle.
The attorney for the defendant recalled Captain Hollard to the witness stand and showed him a gray sweat shirt. Captain Hollar’d testified that he could not be certain whether it was the same sweat shirt that the defendant was wearing the night of the incident. The sweat shirt shown to Captain Hollard at trial was emblazoned with a large LSU logo. He stated that he was not sure that the shirt he saw the perpetrator wearing the night of November 20, 1997, had a logo it. He stated that he was watching the perpetrator’s face, hands, and arms that night. The defendant’s attorney admitted that he was unable to establish that the shirt with the logo that he showed to Captain Holland at trial was the same shirt that the defendant wore the night in question.

ERRORS PATENT

A review of the record for errors patent reveal none.

DISCUSSION

ASSIGNMENT OF ERROR NUMBER 1

In his sole assignment of error the defendant argues that the trial court erred in failing to suppress the one-on-one identification.
The defendant argues that the show-up was suggestive given Captain Hollard’s limited view of the suspect at the time the crime was committed. The defendant argues that when Captain Hollard first drove by and observed someone [ leaning into the vehicle, he did not see the suspect’s face. Rather, he could only see that the suspect was wearing blue jeans and a gray sweatshirt. He argues that Captain Hollard admitted that he lost sight of the suspect for approximately one minute as he made the block. He argues that it was only during the ensuing chase of the suspect that Captain Hollard first saw the suspect’s face. Further, he argues that the only description ever given by Captain Hollard of the suspect was of a black male wearing blue jeans and a gray sweatshirt, with a flat top hairdo. The defendant argues that this was nothing more than a generic description. Accordingly, he argues the identification of the defendant should have been suppressed.
*84 A one-on-one confrontation between a suspect and the victim is generally not favored. However, this court has rejected the idea that one-on-one identifications are suggestive per se or inherently suggestive. State v. Martello, 98-2066 (La.App. 4 Cir. 11/17/99), 748 So.2d 1192; State v. Short, 96-2780 (La.App. 4 Cir. 11/18/98), 725 So.2d 28, unit denied, 99-0198 (La.5/14/99), 745 So.2d 11. Courts generally find that one-on-one identifications are permissible when justified by the overall circumstances, particularly where such identifications are closely associated in time with the commission of the crime, and where the victim or witness had the opportunity to view the assailants at the time of the crime. State v. Grubbs, 93-2559, p. 9 (La. App. 4 Cir. 10/25/94), 644 So.2d 1105, writ denied 94-2880 (La.5/5/95), 654 So.2d 323; State v. Walters, 582 So.2d 317 (La.App. 4 Cir. 1991), unit denied 584 So.2d 1171 (La. 1991); State v. Peters, 553 So.2d 1026 (La. App. 4 Cir.1989). These identifications have been upheld because prompt confrontation between a defendant and victim promotes fairness by assuring the reliability of the identification (while the victim’s memory is fresh) |sand the expeditious release of innocent suspects. Grubbs, 644 So.2d at 1112; State v. Bickham, 404 So.2d 929, 934 (La.1981); State v. Robinson, 404 So.2d 907 (La.1981).
Even a suggestive out-of-court identification will be admissible if it is found reliable under the totality of circumstances. State v. Guy, 95-0899 (La.App. 4 Cir. 1/31/96), 669 So.2d 517, writ denied, 96-0388 (La.9/13/96), 679 So.2d 102. In Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), as adopted by the Louisiana Supreme Court in State v. Prudholm, 446 So.2d 729 (La. 1984), the Court set forth a five-factor test to determine whether an identification is reliable. The five factors are: 1) the witness’s opportunity to view the defendant at the time the crime was committed; 2) the degree of attention paid by the witness during the commission of the crime; 3) the accuracy of any prior description; 4) the level of the witness’s certainty displayed at the time of identification; and 5) the length of time elapsed between the crime and the identification.
In the instant case, all five factors specified in Manson v. Brathwaite were met. The captain had ample opportunity to view the defendant during the crime and immediately after the crime. Captain Hollard first observed the defendant as he was standing by the open door of the vehicle. At that time he noticed the type of clothing the defendant was wearing and he noticed the bicycle. When he returned, he observed the same person riding away on the bicycle, with the alarm still going off. Within minutes of pursuing the defendant, the captain came face to face with the defendant when the defendant turned and asked why the captain was hassling him. Captain Hollard saw the defendant’s face four times that night prior to identifying him as the burglar. Captain Hollard testified that the first time the defendant faced him the two men were about five or six feet away. The second [9time the defendant faced him, he was no more than about ten feet away. The third and fourth times the defendant faced Captain Hollard he was perhaps seven feet away. He was on the sidewalk and the captain was immediately adjacent to it. Captain Hollard testified that the lighting conditions were good each time he saw the defendant’s face.
Additionally, it is apparent that the captain paid close attention to the defendant and gave accurate descriptions of him pri- or to identifying him in the police car. During the chase, Captain Hollard gave a radio description of the defendant as wearing a gray sweatshirt and blue jeans. When apprehended, this is exactly what the defendant was wearing. The captain also described the defendant’s hairstyle accurately, noting that it was a flattop. When identifying the defendant after his apprehension, the captain was certain that he was the burglar. The length of time between the crime and the identification *85 was very short. Only ten to fifteen minutes elapsed between the time the defendant escaped and the time he was apprehended. Considering all of these factors, there is little doubt that the identification of the defendant by Captain Holland was reliable and that there was no substantial likelihood of .misidentification. The defendant fails to prove that the trial court abused its discretion when it denied the motion to suppress.
For the foregoing reasons, the defendant’s conviction and sentence are affirmed.

CONVICTION AND SENTENCE AFFIRMED.

. At this hearing Captain Hollard’s last name is given as ''Holland,” not ''Hollard.” However, at all other locations in the record his name is spelled "Hollard.”