672 So.2d 237 (1996)
STATE of Louisiana, Appellee,
v.
Timothy L. SHAW, Appellant.
STATE of Louisiana, Appellee,
v.
Charlie Dewayne SUMLER, Appellant.
Nos. 27,892-KA, 27,893-KA.
Court of Appeal of Louisiana, Second Circuit.
April 3, 1996.
*240 Peter Edwards, Robert Noel, II, Monroe, for Appellant, Timothy L. Shaw.
Michael Courteau, Gilmer Hingle, Monroe, for Appellant, Charlie Dewayne Sumler.
Richard Ieyoub, Attorney General, Jerry L. Jones, District Attorney, Madeleine M. Slaughter, Asst. District Attorney, for Appellee.
Before MARVIN, WILLIAMS and STEWART, JJ.
WILLIAMS, Judge.
The defendants, Timothy Lavelle Shaw and Charlie Dewayne Sumler, were jointly indicted by a Ouachita Parish grand jury for second degree murder, a violation of LSA-R.S. 14:30.1. After a joint trial, a jury found the defendants guilty as charged. Both defendants unsuccessfully filed motions for post verdict judgments of acquittal and for new trials. The trial court sentenced each defendant to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. The defendants appeal their convictions. For the reasons assigned below, we affirm.

FACTS
In the early morning hours of August 21, 1993, the victim, Patrick Johnson, was shot in the head after winning a dice game against the defendants and several other individuals. Timothy Lavelle Shaw, Charlie Dewayne Sumler, and Levelle Tolliver were jointly indicted for the second degree murder of the victim.[1]
The evidence presented at trial shows that a group of young men, including the defendants in this case, were gathered on the front porch of a house on Third Street in Monroe. The group also included Tolliver, Michael Cooper, Latara Williams and Willie Edwards. The victim pulled up in a car and asked the members of the group if they wanted to participate in a dice game. Several members of the group agreed, and after they purchased the dice, they began playing on the porch. At some point, Tolliver asked the victim to shoot dice for $1.00, but the victim refused because they were shooting for $10.00. The victim won everyone's money. The victim then walked to his car which was parked in the driveway.
Several witnesses gave conflicting testimony as to what happened next. However, the testimony and recorded statements introduced into evidence indicate that Sumler and Shaw came down from the porch and stood in front of the victim. Both men had weapons. Sumler pointed a .380 automatic weapon at the victim. Both Sumler and Shaw were "clicking" the triggers of their guns, but the guns would not fire. According to witnesses, Shaw was perturbed that his gun was malfunctioning. Tolliver, who had remained on the porch with Edwards and *241 Williams, stated, "Let me get a piece of this." He then went behind the victim's car, told the victim to give up the money, and shot the victim in the back of the head. After the shooting, everyone fled the scene. Kenneth Franklin, an individual who had come upon the scene immediately prior to the shooting, took money from the wounded victim. The victim was transported to the hospital where he died several hours later.
Dr. Steven Hayne performed an autopsy on the victim, and testified that the victim died of a single gunshot wound to the right temple of the head. He opined that the wound was made by a projectile from a larger caliber handgun, but he could not determine the size or caliber. The wound was not a contact wound which usually indicates that the gun being held was at least one foot away from the victim when it was fired.

DISCUSSION
Shaw-Assignment of Error No. 1:
Sumler-Assignment of Error Nos. 6, 7 and 8:
(Sufficiency of the Evidence)
Both defendants contend the evidence is insufficient to support their convictions because the state failed to establish that they entered into an agreement with Tolliver to commit the armed robbery of the victim. These contentions lack merit.
When the assignments include the sufficiency of the evidence to convict and other errors, the reviewing court is directed to review the sufficiency assignment first. State v. Hearold, 603 So.2d 731 (La.1992); State v. Huff, 27,212 (La.App. 2d Cir. 8/23/95), 660 So.2d 529. The proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime were proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Cotton, 25,940 (La.App. 2d Cir. 03/30/94), 634 So.2d 937.
The Jackson standard applies to both direct and circumstantial evidence. Direct evidence consists of testimony from a witness who actually saw or heard an occurrence, proof of the existence of which is at issue. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Lilly, 468 So.2d 1154 (La.1985); State v. Turner, 591 So.2d 391 (La.App. 2d Cir.1991), writ denied, 597 So.2d 1027 (1992). When the direct evidence is viewed in the light most favorable to the prosecution, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Stokes, 26,003 (La.App. 2d Cir. 6/22/94), 639 So.2d 395. For circumstantial evidence to convict, it must exclude every reasonable hypotheses of innocence. LSA-R.S. 15:438.
LSA-R.S. 14:30.1(A) defines the crime of second degree murder. That statute provides in pertinent part that second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm; or
(2) When the offender is engaged in the perpetration or attempted perpetration of ... armed robbery, first degree robbery, or simple robbery, even though he has no intent to kill or to inflict great bodily harm.
Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. LSA-R.S. 14:64. Those persons concerned in the commission of the offense, whether present or absent and whether they have aided and abetted, counseled or procured another person to commit the prohibited act, are principals in that offense. LSA-R.S. 14:24. Only those persons who knowingly participate in the planning or execution *242 of a crime are principals. State v. Pierre, 93-0893 (La. 02/03/94), 631 So.2d 427, 428.

(A) The Evidence Supporting Shaw's Conviction
Shaw cites State v. Pierre, supra, in support of his argument that there was insufficient evidence to convict him of the crime of second degree murder. In the Pierre case, the supreme court reversed the defendant's conviction of manslaughter. The defendant had been charged as a principal to second degree murder. The state admitted that the defendant did not kill the victim, and there was no evidence that he counseled or procured his co-defendants to kill the victim. The supreme court reversed the defendant's conviction, because the state failed to establish that the defendant had the specific intent to kill. State v. Pierre, supra at 429. The cases are clearly distinguishable. In the Pierre case, the defendant was charged with second degree murder pursuant to LSA-R.S. 14:30.1(1) which requires specific intent. State v. Pierre, supra. Here, Shaw and Sumler were merely charged pursuant to 14:30.1. Therefore, the state could have met its burden by establishing either that the defendants specifically intended to kill the victim or that they were involved in the commission or attempted commission of an enumerated felony during which time the victim was killed.
The evidence presented at trial shows that the state met its burden of proving that the victim was killed during an armed robbery in which Shaw, Sumler, and Tolliver were all participants. Shaw stated that he and Sumler agreed to rob the victim. A state's witness, Latara Williams, also testified that he heard Sumler and Shaw planning to rob the victim. Williams, Willie Edwards, and Marlo Moore all testified that Shaw had a gun, and additionally, Kenny Franklin testified that Shaw and Sumler were holding their guns on the victim and blocking the victim's path back to the porch to retrieve his car keys. Shaw himself testified that Michael Cooper attempted to dissuade the individuals with guns from robbing the victim. Although Shaw would not admit being in possession of a gun, the evidence shows that he, Sumler and Tolliver had firearms. Finally, Edwards and Moore testified that Tolliver, Cooper, Shaw and Edwards met at Ms. Moore's home after the shooting and discussed the events surrounding the shooting. Ms. Moore stated that the money had been divided between persons participating in the conversation at her home. This evidence, when viewed in the light most favorable to the state, is sufficient to support Shaw's conviction of second degree murder.

(B) The Evidence Supporting Sumler's Conviction
There is ample evidence to support the jury's conclusion that Sumler knew Tolliver was involved in the planning of the robbery. Williams, Edwards, and Cooper testified that Tolliver was present on the porch when the victim drove up. Sumler stated that Cooper, Shaw, Edwards, Williams, Tolliver, and he were "hanging together."
Sumler testified that "they" discussed robbing the victim at the time he first drove up. He also said that Cooper overheard this conversation and began trying to talk them out of the robbery. When asked if Tolliver was involved in the conversation, Sumler merely replied "not then," thus implying that Tolliver became a part of the conversation concerning the robbery at a later point in the evening.
Sumler also stated that after he and Shaw agreed to rob the victim, Shaw and Tolliver stepped aside and began talking. Additionally, Sumler admitted that he saw Tolliver run from behind the victim's car with his gun pointed in the air just before Tolliver shot the victim, and that he was "holding" his gun on the victim at the time Tolliver shot him. Other witnesses also testified that Sumler was pointing a gun at the victim at the time Tolliver shot him.
This evidence, viewed in the light most favorable to the prosecution, establishes that Sumler was a principal to the crime of armed robbery during which time the victim was killed. Further, the evidence presented at trial was legally sufficient to prove that Tolliver was involved in the plan to rob the victim. Therefore, on this record, we conclude the evidence was legally sufficient to *243 convict beyond a reasonable doubt Sumler, as a principal, of the crime of second degree murder of Patrick Johnson during the perpetration of an armed robbery of the victim.

Sumler-Assignments of Error Nos. 1 and 2:
(Admissibility of Recorded Statements)
In his first and second assignments of error, Sumler contends the trial court erred in denying his motion to exclude his recorded statement and his co-defendant Shaw's recorded statement at their joint trial. Alternatively, he contends the trial court erred in denying his motion to strike portions of both recorded statements. In support of his contentions, he cites Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and asserts that the admission of Shaw's statement deprived him of his right of confrontation. These assignments lack merit.
In Bruton, the Supreme Court held that the admission of a non-testifying co-defendant's confession had deprived the defendant of his rights under the Confrontation Clause of the Sixth Amendment. Subsequently, in a later case, the Supreme Court held that the admission of a confession of a co-defendant is not error when the defendant's own confession was also introduced into evidence and it "interlocked" or was substantially identical to the confession of a co-defendant. Parker v. Randolph, 442 U.S. 62, 99 S.Ct. 2132, 60 L.Ed.2d 713 (1979). This court has also followed that rule. See State v. Murphy, 463 So.2d 812 (La.App. 2d Cir.), writ denied, 468 So.2d 570 (1985). Therefore, a co-defendant's statement regarding the defendant's participation in a crime which is thoroughly substantiated by the defendant's own statement is directly admissible against the defendant as substantive evidence. State v. Walters, 523 So.2d 811 (La.1988).
In the present case, each defendant's statement was redacted and then read to the jury so that the edited portions were excluded. Inconsistencies in the remainder of the confessions include statements as to which of the defendants planned the robbery with Tolliver before talking to the other defendant, whether Shaw and Sumler each had a gun or shared one, and whether Sumler pulled the trigger of his gun while pointing it at the victim. These conflicts show attempts by Shaw and Sumler to place greater culpability on the other. However, both defendants admit to talking to each other and planning to rob the victim, and both defendants admit to standing in front of the victim with guns in a confrontational fashion. Additionally, neither defendant denies knowing that Tolliver was a part of the robbery plans, but each simply asserts that he was not around when Tolliver was initially made aware of the plan. Therefore, the conflicting testimony mentioned is not substantially relevant. Considering the portions of their confessions to which both admit, they are guilty of the crime of armed robbery as principals. For that same reason, additional statements by Shaw,[2] which are not included in Sumler's statement, do not preclude the defendants' redacted confessions from interlocking and being admissible.
This conclusion is consistent with our decision in State v. Murphy, supra. In Murphy, two men robbed a convenience store. However, only one of the men pointed a gun at the store clerk. Both defendants confessed that they participated in the armed robbery, but each claimed that the other held the gun. The trial court held that both statements were admissible and we affirmed.
In the present case, neither defendant denies, in his confession, his participation in the armed robbery of the victim or that Tolliver was also a participant in the robbery plans. Therefore, each of their statements, as read to the jury, thoroughly substantiated the other, was interlocking, and was admissible at the trial.
Sumler-Assignment of Error Nos. 3, 4 & 5:
(Special Jury Charge; Improper Reasonable Doubt Instruction)
In his third assignment of error, Sumler contends the trial court erred in denying *244 his request for a special jury charge regarding the law of principals. LSA-C.Cr.P. Art. 807 states in pertinent part:
The state and the defendant shall have the right before argument to submit to the court special written charges for the jury....
A requested special charge shall be given by the court if it does not require qualification, limitation or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or another special charge to be given.
In the instant case, Sumler contends that he requested a jury instruction which stated that he "could only be a principal if he entered into some agreement or procurement of the actual murderer to enter into either murder and/or assault/robbery." However, this charge does not appear in Sumler's request for special charges. Thus, the issue was not before the trial court and was not preserved for appeal. Nonetheless, even if Sumler requested the above quoted special charge, it is confusing, and it does not correctly state the law. The record reflects that the trial court correctly instructed the jury on the law of principals as follows:
Principals are all persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.
To convict one as a principal, the state must prove more than mere presence at the crime scene.
Because the charge requested by Sumler was incorrect, and because the trial court correctly instructed the jury regarding the law of principals, we find no error in the trial court ruling denying this requested jury charge.
By his fifth assignment of error, Sumler contends the trial court erred in denying his request for a special jury charge on the law of criminal conspiracy. As previously stated, the special charge must be pertinent to the case before the trial court. LSA-C.Cr.P. Art. 807. Sumler was not charged with criminal conspiracy, nor is criminal conspiracy a responsive verdict to second degree murder. LSA-C.Cr.P. Art. 814(A). Therefore, the law of conspiracy was not pertinent to his case, and the trial court correctly denied Sumler's request for a special charge regarding criminal conspiracy.
In his fourth assignment of error, Sumler contends the trial court improperly instructed the jury regarding reasonable doubt. During its charge to the jury, the trial court stated:
While the state must prove guilt beyond a reasonable doubt, it does not have to prove guilt beyond all possible doubt. Reasonable doubt is doubt based on reason and common sense and is present when, after you have carefully considered all the evidence, you cannot say that you are firmly convinced of the truth of the charge.
A jury charge must be considered as a whole, and particular expressions in a charge must be construed in context of the entire charge. A conviction will not be reversed on the ground of an erroneous charge unless the disputed portion, when considered in connection with the remainder of the charge, is erroneous and prejudicial. The standard to be used when considering an allegedly improper jury instruction is whether there is reasonable likelihood that the jury applied the challenged instruction in an unconstitutional manner. State v. Smith, 91-0749 (La. 05/23/94), 637 So.2d 398.
The record reflects that Sumler objected to the trial court's definition of reasonable doubt. He argued that the word "firmly" narrows the scope of reasonable doubt in an impermissible fashion. However, this exact definition has been approved by our third and fourth circuit courts. State v. Watts, 596 So.2d 306 (La.App. 3d Cir.1992), writ denied, 599 So.2d 316 (1992); State v. Grubbs, 93,2559 (La.App. 4th Cir. 10/25/94), 644 So.2d 1105, writ denied 654 So.2d 323. In the Grubbs case, the court stated that the use of the word "firmly" in the charge did not refer to the degree of doubt required for conviction, but to the certainty that the evidence supported the crime charged. State v. Grubbs, supra at 1114. In the present case, *245 as in Grubbs, there is no reasonable likelihood that the jury applied the challenged instruction in an unconstitutional manner. Therefore, the trial court did not improperly instruct the jury regarding reasonable doubt.

Shaw-Assignment of Error No. 2:
(Motion for Severance)
In his second assignment of error, defendant Shaw contends that the trial court erred in granting the state's motion for severance. As previously stated, Shaw, Sumler, and Tolliver were jointly indicted. Shaw and Sumler prepared for a joint trial with Tolliver. However, just before trial, Tolliver moved for appointment of a sanity commission. On the day trial began, the state moved to sever Tolliver's trial from the trial of the defendants. Shaw asserts that the trial court erroneously granted the motion over both defendants' objections.
Under LSA-C.Cr.P. Art. 704, jointly indicted defendants shall be tried jointly unless the state elects to try them separately, or the court, on motion of the defendant and after a contradictory hearing with the district attorney, is satisfied that justice requires a severance. Shaw strenuously argues that once the question of Tolliver's mental incapacity to proceed was raised, the state was barred from proceeding with the prosecution until Tolliver was determined to be competent.
Under LSA-C.Cr.P. Art. 642, once the question of the defendant's mental incapacity to proceed is raised, there shall be no further steps in the criminal prosecution, except the institution of prosecution, until the defendant is found to have the mental capacity to proceed. The purpose of this article is to assure "that no action prejudicial to the defendant will be taken until the defendant's capacity to understand the nature of the proceedings and to assist in his defense has been established." Official Revision Comment (b), LSA-C.Cr.P. Art. 642. Thus, this article clearly suspends the proceedings only against the defendant whose mental capacity is challenged. The appointment of a sanity commission to determine Tolliver's capacity to proceed did not prevent the state from severing the trials and proceeding with its prosecution of Shaw and Sumler. This assignment lacks merit.

Shaw-Assignment of Error No. 3:
(Motion for Continuance)
Shaw next contends that the trial court erred in denying his motion for continuance. After the court granted the state's motion for severance, the defendants moved for a continuance. Shaw argues that the trial court's denial of the motion prejudiced his defense because counsel had to change his trial strategy as a result of the severance.
The decision to grant or deny a motion for continuance rests within the sound discretion of the trial court. LSA-C.Cr.P. Arts. 707 and 712. An appellate court will not disturb a trial court's ruling on this issue except upon a showing that it abused its discretion and that the defendant suffered prejudice as a result. State v. Knighton, 436 So.2d 1141, 1147 (La.1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984).
In the Knighton case, the defendant asserted that the trial court should have granted a continuance for several reasons including the severance of a co-defendant. The supreme court held that the defendant had not shown that the denial prejudiced his case. The court stated that since counsel had been preparing the defense for both defendants prior to the severance, he was well versed in the facts of the case. State v. Knighton, supra at 1147. We have reviewed the transcript of the hearing on the motion for continuance. Although Shaw's counsel asserted that he had planned for a trial with Tolliver as a co-defendant and that Tolliver's severance would hurt Shaw's case, counsel has not made a real showing of prejudice. Additionally, a review of the record shows that Shaw's counsel was well versed in the facts of this case. Therefore, we find no abuse of discretion by the trial court in the denial of the motion for continuance.

Shaw-Assignment of Error No. 4:
(Error Patent)
Finally, Shaw has requested that this court review the record for errors patent. This request is unnecessary since such a review is made automatically in all criminal cases. State v. Stamper, 615 So.2d 1359 (La.App. 2d Cir.1993), modified on other grounds, 624 *246 So.2d 1208. We have examined the record for error patent, LSA-C.Cr.P. Art. 920(2), and found none.

CONCLUSION
For the foregoing reasons, the defendants' convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] Just before trial, the court granted Tolliver's motion for appointment of a sanity commission, and his trial was severed from the trial of these two defendants.
[2] These additional statements include attempts to implicate "everyone" in the robbery, statements regarding Tolliver's actions in the days following the shooting, and statements regarding Tolliver's brother's alleged disposal of Tolliver's gun.