LOLLEY, J.
hThis criminal appeal arises from the Fourth Judicial District Court, Ouachita Parish, Louisiana. In 1994, the defendant, Charles Sumler, was convicted of second degree murder, committed when he was a juvenile. He received the mandatory sentence of life imprisonment without benefit of probation, parole, or suspension of sentence. His conviction and sentence were upheld on appeal. Following the per cu-riam decision in State v. Montgomery, 2013-1163 (La. 06/28/16), 194 So.3d 606, the trial court vacated Sumler’s sentence and resentenced him to life imprisonment at hard labor, with the benefit of parole eligibility. Sumler now appeals his sentence, which we affirm for the following reasons.
Facts
On August 21, 1993, Charles Sumler (age 15), Timothy Shaw (age 17), and Le-velle Tolliver (a major) were playing dice with a group of individuals, including Patrick Johnson, on the front porch of a home in Monroe, Louisiana. When the game ended, Johnson took his money and started to leave. As Johnson left the porch and moved toward his vehicle, Sumler and Shaw blocked his path. Both Sumler and Shaw had guns, which they pointed at Johnson and began “clicking” the triggers. When the guns did not fire, Tolliver approached Johnson, told him to give up his money, and then shot Johnson in the back of the head. Johnson died several hours *506 later. Sumler and Shaw later admitted that they planned to rob Johnson after the game.
Sumler, Shaw, and Tolliver were all charged with second degree murder, in violation of La. R.S. 14:30.1. Tolliver’s prosecution was severed from Sumler and Shaw, who were tried together. Following a jury trial, 12SumIer and Shaw were found guilty as charged. The sentencing court imposed the mandatory sentence of life imprisonment, without benefit of probation, parole, or suspension of sentence.
Sumler and Shaw both appealed their conviction and sentence. In a joint opinion, this court concluded there was sufficient evidence to establish that Sumler and Shaw participated in the armed robbery that resulted in Johnson’s death, as required to support the convictions for second degree murder. State v. Shaw, 27,892 (La.App. 2 Cir. 04/03/96), 672 So.2d 237, and State v. Sumler, 27,892 (La.App. 2 Cir. 04/03/96), 672 So.2d 237. Sumler’s and Shaw’s convictions and sentences were affirmed, Id.
In 2014, in response to Miller v. Alabama, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), Sumler filed a motion to correct illegal sentence. Miller held that a mandatory sentencing scheme that denies parole eligibility for those convicted of a homicide committed while the offender was a juvenile violates the Eight Amendment’s prohibition against cruel and unusual punishment. The trial court initially denied that motion, but it was revived in 2016 after Montgomery v. Louisiana, — U.S. -, 136 S.Ct. 718, 193 L.Ed.2d 599 (2016), held that Miller applied retroactively to defendants whose convictions and sentences were final’prior to the decision in Miller. On remand in State v. Montgomery, supra, the Louisiana Supreme Court directed that La. C. Cr. P. art. 878,1 and La. R.S. 15:574.4(E), which were enacted to comply with Miller, should also be applied to cases being resentenced retroactively on collateral review.
| .¡Accordingly, Sumler and Shaw appeared before the trial court for a Miller hearing, i. e., to consider the issue of parole eligibility.[1] The trial court judge noted he had presided over Sumler’s trial, and he was familiar with the facts and circumstances of the case. The judge noted that Sumler had been convicted as a principal in Johnson’s homicide, and he was not the shooter. The trial judge specifically found that Sumler was not in the .class of worst offenders and stated his intention to grant Sumler eligibility for parole. However, the trial court determined it did not have authority to set aside the jury’s. verdict of second degree murder, which had been upheld on appeal for Sumler and had already become final many years ago. The trial court also found that it had no authority to amend Sumler’s sentence, which had also been upheld and become final, except to comply with Miller, Montgomery, and La. C. Cr. P. art. 878.1, to consider the possibility of parole for this juvenile offender.
At the Miller hearing, the trial court admitted into evidence Sumler’s presen-tence investigation (“PSI”) report, as well as the records from the institution where Sumler had been incarcerated for the last 23’ years. The trial court denied Sumler’s request to" present mitigating evidence after concluding that further evidence was unnecessary in light of the court’s intention to simply grant Sumler’s eligibility for parole.
Sumler’s motion to correct' an illegal sentence was denied as moot, in light of *507 the court’s intended ruling. The trial court vacated Sumler’s prior sentence and .resen-tenced him to life imprisonment at hard labor, with the benefit of parole eligibility.
|4Sumler filed a motion to appeal his resentencing, which was subsequently granted. Shortly thereafter, he filed a motion to reconsider sentence, in which he again argued that the trial court should sentence him according to the sentencing guidelines for manslaughter, as provided in La. R.S. 14:31. The motion was denied that same day.
Sumler then sent a pro se letter to the trial court requesting another hearing on the matter. The trial court issued an order directing Sumler’s attorney to advise whether he would adopt Sumler’s motion; directing the state to advise whether the court was obligated to respond to the pro se filing; and, instructing Sumler to confer ■with his attorney before making any future filings. The state responded that Sumler had already raised . these same claims, which had already been denied, and Sum-ler’s request failed to raise any new claims or indicate the existence of any new evidence. The trial court denied the pro se request for a new hearing.
Finally, Sumler filed á pro se motion to vacate an illegal sentence, and. claimed that La. R.S. 14:30.1 did not provide a sentence for juvenile homicide offenders since the mandatory scheme was held unconstitutional in Miller, supra. The record lodged on appeal does not include a ruling on this pro se motion. Instead, a handwritten note was attached to Sumler’s filing, which stated there was no action required by the trial court. This appeal ensued.
Discussion

Constitutionality of La. C. Cr. P. art. 878.1

In his first briefed assignment of error, Sumler raises a new claim that La. C. Cr, P. art. 878.1 violates the' equal protection clause of the 14th Amendment of the U.S. Constitution, because it treats some youthful offenders differently than other youthful | (¡offenders.[2] The defendant argues that the statute applies only prospectively to comply with Miller v. Alabama, supra.
Statutes are presumed to be valid, and the constitutionality of a statute should be upheld whenever possible. State v. Hart, 1996-0599 (La. 01/14/97), 687 So.2d 94. A constitutional challenge may not be considered by an appellate court unless it was properly pled and raised in the trial court below. State v. Hatton, 2007-2377 (La. 07/01/08), 985 So.2d 709. A constitutional challenge to a state law must be pled or litigated in the trial court, in order for the issue to be considered on appeal. State v. Kennedy, 49,036 (La.App. 2 Cir. 05/14/14), 140 So.3d 1201. Additionally, where a statute is alleged to be unconstitutional, the state attorney general must be served with a copy of the proceeding and given the opportunity to be heard. La. C.C.P. art. 1880.
There is no showing in the record that Sumler properly raised his constitutional challenge of La. C. Cr. P. art. 878.1 before thé trial court and no showing that the attorney general was served notice of any such claim. Accordingly, this issue is not properly before us, and this assignment of error will not be considered.
*508 Applicability of Miller/Montgomery
In his additional assignments of error, Sumler argues that La. C. Cr. P. art. 878.1, enacted in 2013, does not apply to him because it was not in effect at the time he committed the offense in 1993. Sumler asserts that the statute applies prospectively, based on the ruling in State v. Tate, 2012-2763 (La. 11/05/13), 130 So.3d 829, which held that Miller, supra, did not apply retroactively to cases on collateral review. He also argues that since the Louisiana Legislature failed to pass legislation that allows him to be resentenced in accordance with Miller and Montgomery, the trial court should have vacated his conviction and sentence, entered a judgment of guilty for the next lesser, and included responsive verdict of manslaughter, and sentenced him according to the penalty for manslaughter. Notably, the defendant fails to observe the ruling on remand in State v. Montgomery, supra, which has direct applicability to his case.
“This court has consistently held that the law in effect at the time of the commission of the offense is determinative of the penalty which the convicted accused must suffer.” Massey v. Louisiana Dep’t of Pub. Safety & Corr., 2013-2789 (La. 10/15/14), 149 So.3d 780, 783. The punishment for a conviction of second degree murder remains the same today as it was in 1993, at the time Sumler committed the offense, and subjects him to life imprisonment at hard labor, without benefit of parole eligibility, probation, or suspension of sentence. La. R.S. 14:30.1. However, the Miller and Montgomery cases apply to defendants who were juveniles at the time they committed first or second degree murder, in violation of La. R.S. 14:30 and La. R.S 14:30.1. As previously noted, Miller v. Alabama, supra, held that a sentencing court must consider a juvenile homicide offender’s youth and its attendant characteristics before sentencing such a defendant to life imprisonment without the possibility of parole.
In order to comply with Miller, our state legislature enacted in 2013 La. C. Cr. P. art. 878.1 and La. R.S. 15:574.4(E). In State v. Montgomery, supra at 607-08, the Louisiana Supreme Court dictated that, “Article 878.1 7requires the District Court to conduct a hearing ‘[i]n any case where an offender is to be sentenced to life imprisonment for a conviction of first degree murder (R.S. 14:30) or second degree murder (R.S. 14:30.1) where the offender was under the age of eighteen years at the time of the commission of the offense ... to determine whether the sentence shall be imposed with or without parole eligibility pursuant to the provisions of R.S. 15:574.4(E).’” Louisiana C. Cr. P. art. 878.1 states: .
A. In any case where an offender is to be sentenced to life imprisonment for a conviction of first degree murder (R.S. 14:30) or second degree murder (R.S. 14:30.1) where the offender was under the age of eighteen years at the time of the commission of the offense, a hearing shall be conducted prior to sentencing to determine whether the sentence shall be imposed with or without parole eligibility pursuant to the provisions of R.S. 15:574.4(E).
B. At the hearing, the prosecution and defense shall be allowed to introduce any aggravating and mitigating evidence that is relevant to the charged offense or the character of the offender, including but not limited to the facts and circumstances of the crime, the criminal history of the offender, the offender’s level of family support, social history, and such other factors as the court may deem relevant. Sentences imposed without parole eligibility should normally be re *509 served for the worst offenders and the worst cases.
For defendants who were granted parole eligibility under La. C. Cr. P. art. 878.1, La. R.S. 15:574.4(E) provides the conditions these defendants must first satisfy before being considered for parole. In State v. Tate, supra, the Louisiana Supreme Court held that Miller applied prospectively, and not to defendants sentenced prior to Miller. Then, in State v. Montgomery, 2013-1163 (La. 06/20/14), 141 So.3d 264, the Louisiana Supreme Court upheld the trial court’s denial of Montgomery’s motion to correct an illegal sentence based on Tate, supra, and held that Miller did not apply retroactively to Montgomery’s case on collateral review. However, that |sruling was reversed by the United States Supreme Court, which held that Miller v. Alabama, supra, applied retroactively to juvenile offenders whose cases were final prior to the Miller decision. Montgomery v. Louisiana, — U.S. -, 136 S.Ct. 718, 193 L.Ed.2d 699 (2016). The case was remanded to the Louisiana Supreme Court for further determination.
On remand, the Montgomery court was faced with the fact that the Louisiana Legislature declined to enact proposed legislation that addressed the resentencing of those juvenile homicide defendants whose convictions were final prior to the Miller decision. The court stated:
Therefore, in the absence of further legislative action, the previously enacted provisions should be used for the resen-tencing hearings that must now be conducted on remand from the United States Supreme Court to determine whether Henry Montgomery, and other prisoners like him, will be granted or denied parole eligibility. Certainly, the legislature is free within constitutional contours to enact further laws governing these resentencing hearings but in the absence of such legislation, this court must provide guidance to the lower courts on the pending cases.
In providing this guidance, we note that existing legislative enactments are applicable, either directly or by analogy.
State v. Montgomery, supra, at 608. In a per curiam decision, the Louisiana Supreme Court vacated Montgomery’s sentence and remanded the case to the trial court for a Miller hearing to be conducted based on La. C. Cr. P. art. 878.1 and La. R.S. 15:574.4. State v. Montgomery, supra.
Eligibility for parole is the sole question to be answered in a Miller hearing. State v. Montgomery, supra at 610. As noted by Justice Crichton in his concurrence to the opinion, “[Ujntil there is further action takén by the Legislature or further developments in the United States Supreme Court, the district courts are faced with one and only one task here: to distinguish between ‘the rare juvenile offender whose crime reflects irreparable 19corruption’ and ‘the juvenile offender whose crime reflects unfortunate yet transient immaturity.’ ” State v. Montgomery, supra at 609, quoting, Miller, 567 U.S. 460, 132 S.Ct. 2455, 2469, 183 L.Ed.2d 407. Accordingly, in a Miller hearing there is no consideration of whether there should be a downward departure from the mandatory sentence of life imprisonment at hard labor. Rather, the court only considers whether that mandatory sentence should include parole eligibility.
By his remaining assignments of error,' Sumler submits that because the Louisiana Legislature “has not done its job,” he should be resentenced to the next lowest responsive verdict, manslaughter. However, the Louisiana Supreme Court in Montgomery, recognized this deficiency in the statutory law, and provided guidance to the district courts, noting the factors imposed by La. C. Cr. P. art. 878.1(B). *510 The Montgomery court instructed that the •district courts may also consider other relevant considerations. Once the Miller .hearing is held, the sentencing court may impose life imprisonment without parole eligibility or life imprisonment with parole eligibility. Either sentencing scheme is constitutional, so there is no need to sentence a defendant to a lesser and included responsive verdict. State v. Graham, 2014-1769 (La.App. 1 Cir. 04/24/15), 171 So.3d 272, writ denied, 2015-1028 (La. 04/8/16), 191 So.3d 583. Thus, Sumler’s assignment of error is without merit.
Sumler’s argument that La. C. Cr. P. art. 878.1 was not in force at the time of his crime and, therefore, does not apply to him is without also merit. Primarily, Sumler ignores Montgomery v. Louisiana, supra, which held specifically that Miller applies to cases decided prior to it. Further, State v. Montgomery, supra, specifically noted that the Louisiana Legislature had h/‘ultimately failed” to enact legislation for these defendants, and, in light of that void in statutory law, it instructed the trial court to comply with Miller and Montgomery by applying La. C. Cr. P. art. 878.1 and La. R.S. 15;574.4(E) to defendants being resentenced, on collateral review, even where those crimes were committed prior to the enactment of the statutes.
Furthermore, there is no ex post facto violation in applying La. C. Cr. P. art. 878.1 and La. R.S. 15;574.4(E) to Sumler’s case because his potential sentence is not more severe than the prior potential sentence and does not subject him to a longer incarceration than the prior potential sentence. After his resentencing, Sum-ler is subject to a lesser sentence than before—life imprisonment with parole eligibility instead of without parole eligibility. Furthermore, because juvenile -homicide offenders had'no potential sentence that included parole eligibility in 1993, Sumler is precluded from arguing that he is now subject to harsher parole conditions.
Finally, there is no merit to the argument that Sumler’s sentence was in error because it was not particularized or did not consider a downward departure from the mandatory minimum of life imprisonment at hard labor, with eligibility for parole. As previously stated, the sole issue to be resolved in a Miller hearing is parole eligibility and so providing a “particularized sentence” in accordance with Miller and Montgomery is to determine whether the facts support the granting of parole eligibility. In enacting La. C. Cr. P. art. 878.1 and La. R.S. 15;574.4(E), the Louisiana Legislature did not grant any authority to vacate the verdict and enter a judgment for a lesser and included offense or reconsider whether the defendant is entitled to a downward departure from the mandatory sentence of life imprisonment. The applicable punishment pursuant to La. R.S. 14:30.1 remains life | nimprisonment at hard labor, and the trial court is only required and authorized to consider the issue of parole eligibility.
Conclusion
For the foregoing reasons, the conviction and sentence of Charlie DeWayne Sumler are affirmed.
AFFIRMED.

. Although Sumler and Shaw appeared together. for purposes of the Miller hearing, they have appealed separately. Thus, reference herein will be to Sumler alone.

. In his appeal brief, Sumler presents 14 assignments of error, but provides argument for only four of those assignments.