# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## KA 17-620


**STATE OF LOUISIANA**

**VERSUS**

**FREDERICK THOMAS**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 131-695
HONORABLE MONIQUE FREEMAN RAULS, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## BILLY HOWARD EZELL
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Billy Howard Ezell, and John E. Conery, Judges.


**AFFIRMED.**

**Phillip Terrell, Jr.**
**Ninth Judicial District Court District Attorney**
**P.O. Box 1472**
**Alexandria, La 71309**
**(318) 473-6650**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **State of Louisiana**

**Annette Fuller Roach**
**Louisiana Appellate Project**
**P. O. Box 1747**
**Lake Charles, LA 70602-1747**
**(337) 436-2900**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Frederick Thomas**

**EZELL, Judge.**

Defendant Frederick Thomas, then seventeen years old, pled guilty to second degree murder in 1974 and received a sentence of life imprisonment without benefit of probation, parole, or suspension of sentence for the first twenty years. A subsequent change in the law ended his parole eligibility.

In 2012, the Supreme Court ruled in *Miller v. Alabama*, 567 U.S. 460, 132 S.Ct. 2455 (2012), that a juvenile convicted for homicide cannot be sentenced to life imprisonment without parole unless mitigating factors are considered. On June 18, 2013, Defendant filed a motion to correct an illegal sentence, arguing that *Miller* rendered his sentence improper. In that motion, he sought to have his sentence vacated and to receive a new sentencing hearing. He filed a second motion on July 10, 2013, seeking to be resentenced pursuant to the next lesser offense. These motions were ultimately dismissed; at the time Louisiana courts did not consider the *Miller* holding to be retroactive.

Defendant filed a third motion to correct an illegal sentence on March 3, 2016, in light of the Supreme Court's holding in *Montgomery v. Louisiana* 84 U.S. 4063, 136 S.Ct. 718 (2016), that *Miller* applies retroactively. He also filed a Motion for Appointment of Sociologist and Psychologist and a Motion for Appointment of Competent Counsel for Re-Sentencing Hearing. After various hearing dates were re-set or continued, and Defendant filed two memoranda in support of his claims, the district court held a hearing on March 27, 2017. Defendant appeared with counsel; the hearing included his co-defendant Roderick Thomas, who is also his brother and other defendants from unrelated cases seeking to advance *Miller* claims. Ultimately, the district court re-sentenced him to life imprisonment with the possibility of parole pursuant to *Montgomery*.

## FACTS

The underlying facts of the case have no bearing on the current appeal. As already stated, Defendant pled guilty to second degree murder in 1974.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there are no possible errors patent regarding the legality of Defendant's sentence as raised and discussed in Assignment of Error Number One.

## ASSIGNMENT OF ERROR NUMBER ONE

In his first assignment of error, Defendant argues the district court erred by failing to consider and rule upon issues he presented in his pro se motion to correct an illegal sentence, which relied upon the *Miller* ruling.

Although Defendant's original 1974 sentence included the possibility of parole after twenty years, a subsequent change in Louisiana law applied retroactively and ended his parole eligibility. The situation was explained in the following colloquy from the resentencing hearing:

BY MRS. AUGUSTINE:

> Okay. Well, let's call him first. Frederick Thomas, *Docket Number 131,695*.

> (THE DEFENDANT WAS PERSONALLY PRESENT, TOGETHER WITH HIS ATTORNEY, MR. J. MARC LAMPERT. )

BY MRS. AUGUSTINE:

> Mr. Thomas, after speaking to the Department of Corrections, you were sentenced, in 1974, to life with the possibility of parole up to twenty years. That sentence, as it now stands, though, is life without the possibility of parole. The law changed in 1976. So, based on your motion, you'd be here, today, to be granted parole eligibility.

2

BY THE DEFENDANT:

That's what my motion['s] about, for probably, you know, [to] correct a[n] illegal sentence.

BY MRS. AUGUSTINE:

Uh-huh.

BY THE DEFENDANT:

Uh-huh.

BY MRS. AUGUSTINE:

And that would be correcting the sentence of life without the possibility of parole. Okay.

BY THE DEFENDANT:

So I would like to object to that.

BY THE COURT:

Uh-huh. Mr. Lampert, you want to make an appearance?

BY MR. LAMPERT:

I've already discussed it with him. I think the, the relief that he wants is available to him today, though. I mean the best he can get is parole eligibility.  I'm sure- -

BY THE DEFENDANT:

It's not gonna get it the [sic] next verdict, huh, that response verdict? Your Honor, I, I filed for correct [sic] the (unintelligible) the next, next, next verdict.

BY MR. LAMPERT:

Okay. Sir, you don't have to accept -- well, maybe you do have to accept. Do you want to decline this relief? If you want to decline this relief, on the record, after the Judge has offered you parole eligibility, do that. I don't know what else to tell you, sir.

Ultimately, the resentencing proceeded as follows:

BY THE COURT:

What was the offense, he said. What was your charge? That's what he's asking.

BY THE DEFENDANT:

Oh. Second degree murder. See, the motion I filed to correct illegal, you know, illegal--

BY THE COURT:

I know. And that's what I'm -- that's what I'm here to do. But you're saying --

BY THE DEFENDANT:

Uh-huh.

BY THE COURT:

-- now that you don't want it.

BY THE DEFENDANT:

Uh-huh.

BY THE COURT:

You filed the motion, but now you're saying you don't want the Court to grant you the relief that you asked for. So do you want it, or not? As it --

BY THE DEFENDANT:

(Unintelligible.)

BY THE COURT:

As it stands, you have life --

BY THE DEFENDANT:

Uh-huh.

BY THE COURT:

-- with no possibility of parole.

4

BY THE DEFENDANT:

> And what --

BY THE COURT:

> That's what your sentence is, as of right now.

BY THE DEFENDANT:

> I'll, I'll take parole. But I['d] just still like to put on I [sic] object to it. I'll take it, though.

BY THE COURT:

> Okay, you objected to it. The State note -- I mean, your, uh, the State notes the objection.

BY THE DEFENDANT:

> What it is.

BY THE COURT:

> The Court notes the objection, and the Court's going to correct your sentence. And you're going to waive the delay for sentencing?

BY MR. LAMPERT:

> Yes, ma'am.

BY THE COURT:

> Okay.

RE-SENTENCING

BY THE COURT:

> The Court is going to sentence you to life, with the possibility of parole. Okay, thank you, sir.  You can get --

Defendant complains that the court did not rule on his request to be sentenced to the next lesser offense, manslaughter, pursuant to jurisprudence that has not been overruled.  Defendant notes that in *State v. Craig*, 340 So.2d 191,

5

193-194 (La.1976), the Louisiana Supreme Court responded to the United States Supreme Court's declaration that the mandatory death penalty was unconstitutional:

> While we affirm Craig's conviction, we must remand for resentencing. In *Roberts v. Louisiana*, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976), the United States Supreme Court declared Louisiana's mandatory death penalty for first degree murder unconstitutional, because the jury is given no chance to consider aggravating or mitigating circumstances:
>
> > "The constitutional vice of mandatory death sentence statutes–lack of focus on the circumstances of the particular offense and the character and propensities of the offender–is not resolved by Louisiana's limitation of first-degree murder to various categories of killings. The diversity of circumstances presented in cases falling within the single category of killings during the commission of a specified felony, as well as the variety of possible offenders involved in such crimes, underscores the rigidity of Louisiana's enactment and its similarity to the North Carolina statute. Even the other more narrowly drawn categories of first-degree degree murder in the Louisiana law afford no meaningful opportunity for consideration of mitigating factors presented by the circumstances of the particular crime or by the attributes of the individual offender." 428 U.S. 325, at page 333, 96 S.Ct. 3001, at page 3006.
>
> Louisiana's mandatory death penalty for aggravated rape suffers the same constitutional infirmities. The jury is given no opportunity to consider mitigating or aggravating circumstances. Therefore, the death penalty for aggravated rape is unconstitutional under *Roberts v. Louisiana*, supra.
>
> The defendant has thus been convicted of a crime whose penalty has been declared unconstitutional. This problem is not a new one, however. After the United States Supreme Court decision in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), which declared the death penalty as then applied unconstitutional, this court remanded murder and rape cases where death had been imposed for resentencing to life imprisonment. See e.g. *State v. Franklin*, 263 La. 344, 268 So.2d 249 (1972), a murder case; *State v. Singleton*, 263 La. 267, 268 So.2d 220 (1972), an aggravated rape case. The precedent for such action had been established in *State v. Shaffer*, 260 La. 605, 257 So.2d 121 (1971), where the problems were discussed, and *State v. Duplessis*, 260 La. 644, 257 So.2d 135 (1971), following the reversal by the United States Supreme Court of our judgment 'insofar as it imposes the death

sentence' for a 'Witherspoon' violation. *Duplessis v. Louisiana*, 403 U.S. 946, 91 S.Ct. 2282, 29 L.Ed.2d 856 (1971).

However, a different situation exists now than at the time of *Franklin* and *Singleton, supra*. At the time those cases were decided, C.Cr.P. 814 provided for a responsive verdict of "guilty without capital punishment" for murder and aggravated rape. C.Cr.P. 817, at that time, also authorized the "qualified" verdict of "guilty without capital punishment," in which case the sentence would be life imprisonment. Thus, reasoning that the responsive verdict of guilty without capital punishment was the next authorized verdict for the crime, we remanded for resentencing as if that verdict has been returned, and, under C.Cr.P. 817, life imprisonment was called for.

The situation has changed. In an attempt to overcome *Furman's* objections to the death penalty, the legislature amended the murder statute to provide for first and second degree murder, making death mandatory for first degree murder. Likewise, the death penalty for aggravated rape was mandatory. To accomplish this, the legislature amended C.Cr.P. 814 to do away with the responsive verdict of "guilty without capital punishment" for first degree murder and aggravated rape. Thus, at the time this crime was committed, November 26, 1974, the only responsive verdicts to a charge of aggravated rape were guilty; guilty of attempted aggravated rape; guilty of simple rape; not guilty. Additionally, C.Cr.P. 817 was amended to delete the provision authorizing the qualifying verdict "guilty without capital punishment." Thus there is no longer any authority for us to remand an aggravated rape case for resentencing to life.

At the time (November 26, 1974) this crime was committed, attempted aggravated rape was punishable by imprisonment for not more than twenty years. R.S. 14:27 D(1). Simple rape carried a penalty of one to twenty years. R.S. 14:43. Thus, following the reasoning of *Franklin* and *Singleton*, supra, we remand this case for resentencing of defendant to the most serious penalty for the next lesser included offense. The legislature obviously intended to impose the most serious penalty available under the law. In this case, although there is a range of from one to twenty years, the most serious penalty is twenty years at hard labor.

Although he indicates that *Craig* has not been overruled, Defendant acknowledges the more recent supreme court ruling in *State v. Shaffer*, 11-1756

(La. 11/23/11), 77 So.3d 939, 941-42 (footnote omitted)[1], which rejected a similar request for relief:

> In light of these commutation provisos, and the difficulty of obtaining commutation of sentence in this state, . . . relators argue that even those life sentences which by express terms do not preclude parole eligibility for inmates who committed non-homicide crimes when they were juveniles are directly governed by *Graham* [*v. Florida*, 560 U.S. 48, 130 S.Ct. 2011 (2010)]. Drawing on prior jurisprudence of this Court, they further argue that the appropriate remedy is to resentence them according to the penalties provided for the next lesser and included responsive verdict of attempted aggravated rape.

> We agree with relators that Louisiana must comply with the *Graham* decision but reject their proposed solution.

>     . . . .

> We therefore amend the sentence of relator Dyer to delete the restriction on parole eligibility.

*See also State v. Leason*, 11-1757 (La. 11/23/11), 77 So.3d 933. As the State points out, Defendant acknowledges in his sixth footnote that a number of appellate courts have also rejected the type of argument set forth by Defendant.

Defendant in the present case alternatively argues that he should be released on probation. However, he acknowledges the La.Code Crim.P. art. 893 does not allow for suspension of a sentence after a defendant has begun to serve it. Also, he recognizes an analogous supreme court case that did not allow probation to the defendant. *State v. Thomas*, 07-634 (La. 1/11/08), 972 So.2d 323. Defendant relies on the dissent in *Thomas*.

The State ultimately argues that Defendant's assertions are ineffectual because the sole relief necessary to comply with *Miller* is the availability of parole. In support, the State cites a discussion by this court:

---

[1] Some portions of *Shaffer* have been modified by amendments to La.R.S. 15:574.4. However, the conclusion that parole eligibility satisfies *Graham* is intact. *State v. Hedgespeth*, 47,523 (La.App. 2 Cir. 11/14/12), 107 So.3d 743, *writ denied*, 12-2594 (La. 5/3/13), 113 So.3d 210.

The Attorney General also argues that the argument raised by Defendant–the mere possibility of parole is not sufficient to satisfy *Miller*–has already been rejected in principle by the Louisiana Supreme Court. In *State v. Shaffer*, 11-1756 (La.11/23/11), 77 So.3d 939, the supreme court addressed the United States Supreme Court case of *Graham v. Florida*, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010), in which the Supreme Court held that a juvenile who commits a *non-homicide* offense cannot be sentenced to life without parole. After the *Graham* decision, Louisiana defendants who had been convicted of aggravated rapes committed when they were under the age of eighteen sought to have their life sentences set aside and to be resentenced. *Shaffer*, 77 So.3d 939. Rather than remand for resentencing, the Louisiana Supreme Court simply amended the life sentences to delete the restriction on parole eligibility. *Id*. The supreme court clarified its holding as follows:

> We reiterate that this Court is not ordering relators released on parole. The determination of whether relators may be released on parole falls within the exclusive purview of the Board of Parole, charged with the duty of ordering parole "only for the best interest of society, not as an award of clemency." La. R.S. 15:574.4.1(B). Access to the Board's consideration will satisfy the mandate of *Graham*.

*Id*. at 943.

In his brief, the Attorney General argues that he fails to see how life with the possibility of parole is a permissible alternative for juveniles who have committed *non-homicide* offenses but is not a permissible alternative for juveniles who have committed *homicide* offenses. We agree. Under *Graham*, a juvenile who commits a offense punishable by life imprisonment *must* be *eligible* for parole. *Graham*, 560 U.S. 48, 130 S.Ct. 2011. However, as the Louisiana Supreme Court held in *Shaffer*, the juvenile may not be released on parole unless the Board of Parole decides to release him. *Shaffer*, 77 So.3d 939. Thus, in reality, a juvenile who commits a *non-homicide* offense punishable by life in Louisiana is only promised the possibility of being released on parole. It stands to reason that a juvenile who commits a *homicide* offense punishable by life imprisonment should be granted no greater relief. As the Attorney General points out, if the mere possibility of being released on parole is sufficient to satisfy the mandatory parole eligibility established in *Graham* for juvenile non-homicide offenders, the mere possibility of being released on parole is more than sufficient to satisfy the chance of parole eligibility after a hearing established in *Miller* for juvenile homicide offenders. As the Louisiana Supreme Court held in *Shaffer* regarding *Graham,* the mere access to the Board of Parole's consideration satisfies the mandates of *Miller*.

*State v. Doise*, 15-713, pp. 9-10 (La.App. 3 Cir. 2/24/16), 185 So.3d 335, 342, *writ denied*, 16-546 (La. 3/13/17), 216 So.3d 808; *State v. Sumler*, 51,324 (La.App. 2 Cir. 5/2/17), 219 So.3d 503.

The State is correct in asserting that access to parole satisfies the dictates of *Miller*. Defendant relies on *Craig*, an older case that is not specific to *Miller*-related jurisprudence, the dissent in *Thomas*, and a federal appellate case, *United States v. Under Seal*, 819 F.3d 715 (4th Cir. 2016), while acknowledging that Louisiana jurisprudence discussing *Miller* is not in his favor.

We further note that La.Code Crim.P. art. 878.1 was amended by 2017 La. Acts No. 277, § 1, and provides in pertinent part:

> B. . . .
>
> (2) If an offender was indicted prior to August 1, 2017, for the crime of first degree murder (R.S. 14:30) or second degree murder (R.S. 14:30.1) where the offender was under the age of eighteen years at the time of the commission of the offense and a hearing was held pursuant to this Article prior to August 1, 2017, the following shall apply:
>
> (a) If the court determined at the hearing that was held prior to August 1, 2017, that the offender's sentence shall be imposed with parole eligibility, the offender shall be eligible for parole pursuant to R.S. 15:574.4(G).
>
> . . . .
>
> D. The sole purpose of the hearing is to determine whether the sentence shall be imposed with or without parole eligibility. The court shall state for the record the considerations taken into account and the factual basis for its determination. Sentences imposed without parole eligibility and determinations that an offender is not entitled to parole eligibility should normally be reserved for the worst offenders and the worst cases.

Louisiana Revised Statutes 15:574.4 was also amended by 2017 La. Acts No. 277, § 2, and provides in pertinent part:

> G. (1) Notwithstanding any provision of law to the contrary, any person serving a sentence of life imprisonment for a conviction of first degree murder (R.S. 14:30) or second degree murder (R.S.

10

14:30.1) who was under the age of eighteen years at the time of the commission of the offense and whose indictment for the offense was prior to August 1, 2017, shall be eligible for parole consideration pursuant to the provisions of this Subsection if a judicial determination has been made that the person is entitled to parole eligibility pursuant to Code of Criminal Procedure Article 878.1(B) and all of the following conditions have been met[.]

The 2017 amendments to La.Code Crim.P. art. 878.1 and La.R.S. 15:574.4 by the Louisiana Legislature effectively ratified the decision of the district court in the present case.

For the reasons discussed, Defendant's assignment lacks merit.

## ASSIGNMENT OF ERROR NUMBER TWO

In his second assignment of error, Defendant goes into more detail regarding the merits of the claims discussed in the first assignment and also argues that the district court should have conducted a hearing on his resentencing claims in light of *Miller*. The State responds that there is no need for a *Miller*-related hearing, as the State does not contest that he is entitled to parole. Further, Defendant has access to parole and as just discussed in the first assignment, such access satisfies the dictates of *Miller*. The States engages in further discussion of the issue, but we find it is not necessary. In view of the principle just stated and the jurisprudence discussed in the previous assignment of error, we find that this assignment lacks merit.

## CONCLUSION

Defendant's sentence is affirmed.

**AFFIRMED.**